OPINION
Appellant, Clarence R. McLain, Jr., M.D., through defendant-appellant, University of Cincinnati Medical Center ("UCMC"), appeals from a judgment of the Ohio Court of Claims finding he was acting outside the scope of his employment with UCMC in rendering medical services to plaintiff-appellee, Gloria Wayman. Because the trial court properly determined Dr. McLain was acting outside the scope of his employment with UCMC, we affirm.
On September 25, 1997, plaintiff and her husband, Rel Wayman, filed a complaint in the Ohio Court of Claims against UCMC, contending Dr. McLain negligently treated plaintiff by failing to adequately assess, diagnose, evaluate, and treat her.
The trial court ultimately held a hearing pursuant to R.C. 2743.02(F) to determine whether Dr. McLain was acting within the scope of his employment with UCMC at the time he rendered care to plaintiff. To facilitate that determination, the parties stipulated that plaintiff's claims arise out of clinical care and treatment Dr. McLain provided during 1996, that the deposition of Dr. McLain properly could be considered by the trial court in determining the issue, that Dr. McLain's care and treatment of plaintiff occurred primarily at his office at his practice plan's Kenwood location, and that his Kenwood office is not located on the campus of the University of Cincinnati.
Following consideration of the submitted materials, the trial court issued a decision finding Dr. McLain was acting outside the scope of his employment with UCMC in treating plaintiff. Accordingly, the Court of Claims found Dr. McLain is not entitled to immunity under R.C. 9.86. Dr. McLain appeals, assigning the following errors:
 I. THE COURT OF CLAIMS ERRED IN FAILING TO FOLLOW THE EXISTING CASE LAW WHICH HOLDS THAT A PHYSICIAN EMPLOYED AS A FACULTY MEMBER AS [sic] A STATE UNIVERSITY COLLEGE OF MEDICINE IS ENTITLED TO IMMUNITY FROM PERSONAL LIABILITY IN A MEDICAL NEGLIGENCE ACTION WHEN THE PHYSICIAN'S INVOLVEMENT IN THE PATIENT'S CARE AND TREATMENT IS AS A FACULTY MEMBER TEACHING OR SUPERVISING RESIDENT PHYSICIANS.
 II. THE COURT OF CLAIMS ERRED IN HOLDING THAT THE UNIVERSITY OF CINCINNATI DOES NOT HAVE THE LEGAL AUTHORITY TO DEFINE THE EMPLOYMENT DUTIES OF ITS MEDICAL SCHOOL FACULTY TO INCLUDE THE PROVISION OF PATIENT CARE SERVICES WITHIN A MEDICAL SCHOOL PRACTICE PLAN.
 III. THE COURT OF CLAIMS ERRED IN HOLDING THAT DR. McLAIN WAS NOT ACTING WITHIN THE COURSE AND SCOPE OF HIS EMPLOYMENT WITH THE UNIVERSITY OF CINCINNATI IN PERFORMING MEDICAL SERVICES WITH RESPECT TO PLAINTIFF/APPELLEE GLORIA WAYMAN BECAUSE A PROPER LEGAL INTERPRETATION OF THE DOCUMENTS DEFINING THE EMPLOYMENT CONTRACT ESTABLISHES OTHERWISE.
 IV. THE COURT OF CLAIMS ERRED IN NOT LIMITING ITS DETERMINATION ON THE IMMUNITY OF DR. CLARENCE R. McLAIN, JR. TO A REVIEW OF WHETHER THE CONDUCT ALLEGED IN THE COMPLAINT WAS MANIFESTLY OUTSIDE THE SCOPE OF DR. McLAIN'S EMPLOYMENT DUTIES AS DEFINED BY THE UNIVERSITY OF CINCINNATI.
Preliminarily, although Dr. McLain was not a party to the proceedings in the Court of Claims, the court nonetheless permitted Dr. McLain to present evidence, to argue the issue of immunity, and to participate as a party. Having participated in the proceedings from which this appeal is taken, Dr. McLain is entitled to participate in the appeal. Norman v. Ohio State Univ.Hosp. (1996), 113 Ohio App.3d 69 [116 Ohio App.3d 69].
Dr. McLain's four assigned errors are interrelated, and thus we address them jointly. Initially, Dr. McLain contends that because UCMC agreed he was acting within the scope of his employment at the time he rendered services to plaintiff, that determination resolves the immunity issue. While UCMC, through its representative, may have expressed an opinion concerning the scope of employment, that opinion is not determinative of the immunity issue, nor binding on the court. Harrison v. Univ. of CincinnatiHosp. (June 28, 1996), Franklin App. No. 96API01-81, unreported. Accordingly, we review the facts to determine whether Dr. McLain was acting within the scope of his employment with UCMC in rendering services to plaintiff.
A state employee may be entitled to statutory immunity pursuant to R.C. 9.86 and 2743.02. Pursuant to R.C. 2743.02(F), the Court of Claims has exclusive original jurisdiction to determine, initially, "whether the officer or employee is entitled to personal immunity under Section 9.86 of the Revised Code." Thus, the question before the Court of Claims was not whether Dr. McLain was an employee of the state at the pertinent time, but rather whether he was acting outside the scope of his employment when he treated plaintiff.
Beginning with Katko v. Balcerzak (1987), 41 Ohio App.3d 375, this court has set significant precedent for assessing when a medical employee is acting outside the scope of his or her employment with the state. Thus, in York v. Univ. of CincinnatiMed. Ctr. (Apr. 23, 1996), Franklin App. No. 95API09-1117, this court determined that a physician who was chairman of the Department of Neurosurgery at the University of Cincinnati and also the Director of the Academic Division of Mayfield Neurological Institute, Inc., a privately owned professional association, was acting outside the scope of his employment when he rendered services to the plaintiff in that action. Factually, defendant there received compensation from the University of Cincinnati, but considerably more from his privately owned professional association. Moreover, that association paid his malpractice insurance, billed for the medical services rendered to the plaintiff at issue and received the compensation for those services. In particular, this court noted the University of Cincinnati received nothing for the medical services rendered to the plaintiff, evidencing the lack of an employment relationship with respect to those medical services.
Similarly, in Balson v. The Ohio State Univ. (June 25, 1996), Franklin App. No. 95API10-1344, unreported, the defendant doctor was employed as an associate professor at The Ohio State University, but also had a contract with the Department of Surgery Corporation as a physician in a division of that practice plan. The practice plan billed for the services rendered to plaintiff's decedent, the patient's insurance carrier made payment directly to the practice plan, and the practice plan provided the malpractice insurance for the defendant doctor. In Balson, the court concluded that the defendant doctor was acting outside the scope of his employment with The Ohio State University.
Finally, in Harrison, each department within the College of Medicine at the University of Cincinnati was required to have a practice plan filed and approved by the Dean of the College of Medicine. Each faculty member at the College of Medicine was required to be a member of a practice plan. The practice plans, however, were separate legal entities from the University of Cincinnati: the University of Cincinnati exercised no physical control over the plans, nor did the University of Cincinnati's operating budget include the private practice plans, even though the practice plans provided contributions to the University of Cincinnati. The physician in Harrison received a salary both from the university and from his practice plan, had two separate employment contracts, received two separate W-2's, and two sets of employee and retirement benefits. Applying the rationale of Katko,York, and Balson, the court in Harrison determined the doctor there was acting outside the scope of his employment with the University of Cincinnati.
From those cases, two major factors arise in determining whether a physician is acting outside the scope of his or her employment for a state university hospital: (1) whether the patient was the physician's private patient or a patient of the university, and (2) the university's financial gain from the treatment rendered compared to the physician's gain from it.Norman, supra.
Here, the Department of Obstetrics Gynecology, to which Dr. McLain belonged, is part of UCMC, which in turn is part of the University of Cincinnati. Virtually all members of the Department of Obstetrics Gynecology are also members of the practice plan, once called University OB/GYN Associates, Inc. and later called Foundation for Obstetrics and Gynecology.
While the Chairman of the Department of Obstetrics 
Gynecology at UCMC reviews and determines the salary for the doctors in the practice plan, most of the monies generated from the physicians engaged in the clinical practice, as members of the practice plan, remain with the practice plan for distribution; only a small percentage of funds derived from the practice plan are directed to the Dean of the College of Medicine. The practice plan pays medical malpractice insurance premiums for its members, as well as telephone, rent, and electricity. As a member of the practice plan, Dr. McLain signed a separate contract with the practice plan, received a W-2 from the practice plan separate from UCMC, and had a retirement fund with the practice plan separate from that provided by UCMC.
Dr. McLain's private patients were seen pursuant to the practice plan frequently at the separate offices of the practice plan. By contrast, clinic patients usually came to the University Hospital Outpatient Department; they were not seen at the offices of the practice plan. Dr. McLain first saw plaintiff in 1983 at the practice plan's Madeira office; he later treated her pregnancy, briefly treated her for infertility thereafter, and generally saw her for gynecological care. Indeed, all care at issue in this lawsuit occurred in the practice plan component offices, not at the university hospitals. Dr. McLain admits plaintiff was a private patient of the practice plan; she was never a patient in the clinic. Moreover, the hospital did not bill for the services he provided in the practice plan, but instead the practice plan was responsible for both billing plaintiff and receiving the funds she paid.
Application of the two major factors from Norman
indicates Dr. McLain was acting outside the scope of his employment in treating plaintiff. Here, the separate practice plan both billed and received monies arising out of services rendered by members of the practice plan. In addition, plaintiff was never seen at UCMC, but was treated at the component offices of the private plan as a private patient. Moreover, other facts closely parallel those of Harrison and York. Dr. McLain's private practice through the practice plan required a separate contract and separate W-2, and it provided him separate malpractice insurance and retirement. Given the close factual similarity of this case with York and Harrison, the trial court did not err in finding Dr. McLain was acting outside the scope of his employment with UCMC in treating plaintiff as a private patient at the practice plan's offices.
Accordingly, the four assigned errors are overruled, and the judgment of the Ohio Court of Claims is affirmed.
KENNEDY and LAZARUS, JJ., concur.